IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ALABAMA ASSOCIATED GENERAL CONTRACTORS, INC.; AUTOMOTIVE AFTERMARKET FUND; WORKERSFIRST COMPFUND; THE ALABAMA SELF-INSURED WORKERS' COMPENSATION FUND; THE HEALTHCARE WORKERS COMPENSATION SELF-INSURANCE FUND; THE ALABAMA WORKERS' COMPENSATION SELF-INSURANCE FUND; ALABAMA TRUCKING ASSOCIATION WORKERS' COMPENSATION SELF-INSURANCE FUND; and ASSOCIATION OF COUNTY COMMISSIONS SELF-INSURANCE FUND, <br><br>  Plaintiffs, <br><br> vs. <br><br> PFIZER, INC., successor in interest to WARNER-LAMBERT COMPANY; DAVID REYNOLDS LONGMIRE; jointly and individually, <br><br>  Defendants. | Civil Action No. 2:06cv523-MHT |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND
THIS ACTION TO STATE COURT**

Plaintiffs, by and through their counsel of record, submit the following Brief in support of their Motion to Remand this action to the Circuit Court of Montgomery County, Alabama:

**I.   INTRODUCTION**

Plaintiffs commenced this action on May 5, 2006, in the Circuit Court of Montgomery County.  Plaintiffs assert claims for unjust enrichment, negligence, wantonness, several

varieties of fraud, and civil conspiracy against Defendants Pfizer, Inc. ("Pfizer") and David Reynolds Longmire ("Longmire"), jointly and individually. Pzifer removed the action to this Court on June 12, 2006, alleging diversity-of-citizenship jurisdiction under 28 U.S.C. § 1332.

However, in its Notice of Removal, Pfizer did not establish the citizenship of any of the eight Plaintiffs. Pfizer failed to allege what type of legal entity each Plaintiff is, and merely made the conclusory statement, "Plaintiffs are all residents and citizens of the State of Alabama." Notice of Removal, ¶ 5. Because business entities like the Plaintiffs here can be citizens of more than one or even numerous States, depending on the nature of the entity, Pfizer's Notice of Removal does not establish complete diversity between Plaintiffs and Defendants. Thus, it does not invoke this Court's removal jurisdiction, a fatal flaw at the outset for Pfizer. "Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, [citations omitted], and the burden of establishing the contrary rests upon the party asserting jurisdiction, [citations omitted]." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "[T]he burden is upon the removing party to plead a basis for federal jurisdiction." *B., Inc. v Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

Pfizer did allege that it is a corporation organized under the laws of the State of Delaware, with its headquarters in the State of New York. Pfizer also alleged that Longmire, an individual, is a resident citizen of the State of Alabama. Pfizer contends that removal is proper because, Pfizer says, Longmire should be realigned as a Plaintiff, and Longmire was fraudulently joined as a Defendant.

Pfizer is wrong. This Court correctly identified the insufficiency of Pfizer's removal

allegations in its Order of June 16, 2006, directing Pfizer to amend the Notice of Removal by July 5, 2006, to adequately allege diversity jurisdiction, or this case would be remanded to state court. As summarized above, Pfizer's Notice of Removal fails to establish federal subject-matter jurisdiction.

Pfizer's omission in its Notice of Removal is telling. It will be impossible for Pfizer to comply with this Court's Order because Plaintiff Alabama Self-Insured Workers' Compensation Fund is an unincorporated association with members having the same citizenship as Pfizer, thus destroying diversity jurisdiction. The remaining Plaintiffs are likewise unincorporated associations, some of which are expected to also have members with the same citizenship as Pfizer.

Because at least one Plaintiff is a citizen of the same State as Pfizer, the Court need not reach Pfizer's anemic arguments as to why Longmire's citizenship should be disregarded. In any event, Pfizer's realignment and fraudulent-joinder contentions misapprehend both the applicable facts and the applicable law, and are totally without merit.

II. **DIVERSITY DOES NOT EXIST EVEN WITHOUT LONGMIRE AS A DEFENDANT, BECAUSE PLAINTIFF ALABAMA SELF-INSURED WORKERS' COMPENSATION FUND IS AN UNINCORPORATED ASSOCIATION WITH MEMBERS WHO ARE CITIZENS OF THE SAME STATE AS PFIZER**

It is axiomatic that in order for federal diversity jurisdiction to exist, each defendant must be diverse from each plaintiff. *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1337-39 (11th Cir. 2002). A corporation, such as Pfizer, is a citizen of the State by which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Thus, Pfizer is a citizen of the State of Delaware and

a citizen of the State of New York. Complaint, ¶ 15; Notice of Removal, ¶ 6.

However, unincorporated associations are different. As this Court has already noted in its June 16th Order, an unincorporated association is a citizen of each State where one of its members is a citizen. *Riley*, 292 F.3d at 1337-1340; *Xaros v. U.S. Fidelity and Guar. Co.*, 820 F.2d 1176, 1181-82 (11th Cir. 1987).[1] Therefore, in order for diversity-of-citizenship jurisdiction to exist between a defendant and an unincorporated association which is a plaintiff, the citizenship of the defendant must be diverse from the citizenship of each member of the unincorporated association.

One of the Plaintiffs in this case, the Alabama Self-Insured Workers' Compensation Fund ("Alabama Fund"), is an unincorporated association created pursuant to Ala. Code 1975 § 25-5-9. *See* Exhibit 1 hereto (Affidavit of Freda Bacon) ("The Alabama Fund is not a corporation and has not filed any articles of incorporation with the Alabama Secretary of State, any county probate court or any other government authority."). *Id.*, ¶ 3. The Alabama Fund is governed by a Board of Trustees. *Id.* Ms. Bacon testifies that the Alabama Fund was created pursuant to § 25-5-9 and is "composed of employers who have agreed to pool their workers' compensation liabilities." *Id.*, ¶ 2.

The Alabama Fund is a voluntary association formed by mutual consent, and is governed by Bylaws to which each member has agreed. *Id.*, ¶¶ 4, 6, and Exhibit A to the Bacon Affidavit (Bylaws). As Ms. Bacon explains in her Affidavit:

---

[1] Moreover, business trusts and joint ventures are treated the same as unincorporated associations for purposes of diversity jurisdiction. *Carden v. Arkoma Associates*, 494 U.S. 185, 189-92 (1990); *Riley*, 292 F.3d at 1337-39. In fact, with the sole exception of a unique entity created under the civil law of Puerto Rico, all artificial business entities except corporations are treated just like unincorporated associations. *Id.*

> The Alabama Fund is an unincorporated association, and is a voluntary group of members formed by mutual consent, acting together to advance a common purpose and objective, as explained in the attached Bylaws.

*Id.*, ¶ 6.

Notably, the remaining Plaintiffs are likewise not corporations and are also formed in the same manner pursuant to § 25-5-9.

At least eleven members of the Alabama Fund are corporations incorporated under the laws of the State of Delaware.[2]  *See* Exhibit 2 hereto (certified certificates of good standing for the eleven corporations); Exhibit 1, ¶ 8 (Bacon affidavit attesting that these corporations are members of the Alabama Fund).  Thus, diversity of citizenship between Plaintiffs and Pfizer does not exist, even when Longmire is not considered in the diversity analysis.

*Four Way Plant Farm, Inc. v. NCCI*, 894 F. Supp. 1538 (M.D. Ala. 1995), is instructive.  In that case, Judge Albritton found that a similar entity, a group of insurers which had contracted together for workers'-compensation-reinsurance purposes, was an unincorporated association.  *Id.* at 1541, 1545-49.  Because this unincorporated association, the defendant NCCI, had members which were citizens of Alabama, and the plaintiffs were also citizens of Alabama, there was no diversity jurisdiction, and the case was remanded to state court.  *Id.* at 1548-49.

The same situation obtains here.  Corporate members of the Alabama Fund are

---

[2] There are doubtlessly even more members of the Alabama Fund that are Delaware corporations, but Plaintiffs' counsel stopped searching after discovering eleven, due to considerations of time and effort.  Likewise, there are doubtlessly Delaware corporations that are members of the other seven workers'-compensation-fund Plaintiffs.

5

citizens of the State of Delaware, as is Pfizer. Therefore, irrespective of whether Longmire should be realigned as a Plaintiff or was fraudulently joined, diversity jurisdiction does not exist and remand of this action to state court is required.

### III. LONGMIRE IS PROPERLY ALIGNED AS PARTY DEFENDANT

Pfizer's request to realign Longmire as a party plaintiff should be rejected. As this Court held in *U. S. Fidelity and Guar. Co. v. Algernon-Blair, Inc.*, 705 F. Supp. 1507, 1511, (M.D. Ala. 1988) (Thompson, J.), the applicable test on a request to realign is "whether there is an actual or substantial controversy" between Plaintiffs and Longmire. There clearly is such an actual or substantial controversy between the Plaintiffs and Longmire. Plaintiffs allege that Longmire was a knowing participant with Pfizer in the fraudulent marketing of Neurontin and seek money damages against him on a number of tort theories.

It is telling that Pfizer has not cited and cannot cite any case where a coconspirator such as Longmire was realigned as a party plaintiff because the coconspirator had filed a subsequent lawsuit contending that he was an unwitting participant in the fraudulent scheme.

Also of note is the fact that Pfizer discusses the case law on realignment in only the most general terms. It is, therefore, instructive to examine more closely the cases cited by Pfizer to see the limited factual contexts in which parties are realigned. For example, *Premier Holidays Int'l, Inc. v. Actrade Capital, Inc.*, 105 F. Supp. 2d 1336, 1340 (N.D. Ga. 2000), involved a requested realignment in a setting where the Premier plaintiffs had filed suit for breach of contract and fraudulent inducement against Actrade. Amwest, another defendant, had issued a bond guaranteeing Premier's performance of its contract with Actrade. In realigning Amwest as a party plaintiff, the Court held:

> The "principal purpose" of the present suit and the "primary controlling matter" is plainly the underlying breach of contract action between plaintiffs and Actrade. As to this controlling issue, there is no collision of interests between plaintiffs and their surety, defendant Amwest. Instead, there is an identity of interests between these parties. If plaintiffs succeed in this litigation, defendant Amwest also succeeds as it will assert that it owes no money under the Bonding Agreement. Should plaintiffs fail, however, Amwest also fails in that it becomes liable for $4,000,000.00 on the Bonding Agreement.

*Id.* at 1341.

Also finding realignment proper in the surety context is this Court's decision in U.S. Fidelity and Guar. Co. v. Algernon-Blair, Inc., *supra*, where USF&G was aligned with the contractor for which it had issued a performance bond. 705 F. Supp. at 1513.

Pfizer also cites *Boland v. State Auto Mut. Ins. Co.*, 144 F. Supp. 2d 1282 (M.D. Ala. 2001), which is likewise clearly distinguishable from the instant case. There, the Court realigned two mortgagee banks with their mortgagor who had filed suit against an insurance company and the banks, seeking damages from the insurance company caused by lightning to the mortgaged properties, and reformation against the banks. In realigning the banks as plaintiffs, the Court held that "[i]t is in the interest of Boland, SouthTrust, and CB&T to enforce the policy, as this will tend to benefit Boland financially and to enhance the value of the Banks' collateral." *Id.* at 1285.

By contrast, in the instant case, the Plaintiffs allege that Longmire and Pfizer committed various torts against them and conspired to defraud them. There obviously is no surety or banking relationship between the Plaintiffs and Longmire. Unlike the cases cited by Pfizer, here the Plaintiffs seek money damages against the party Pfizer seeks to have realigned as a plaintiff. This is fatal to Pfizer's request to realign Longmire. *See*

*Syms, Inc. v. IBI Security Service, Inc.*, 586 F. Supp. 53, 56 (S.D.N.Y.) (holding that since plaintiff sought damages against defendant in question such defendant clearly could not be realigned as a party plaintiff or disregarded as a nominal party).

In an effort to have Longmire realigned, Pfizer contends that:

> The obvious "primary and controlling matter" in this case is a determination as to whether Pfizer created and/or orchestrated any such fraudulent and illegal marketing scheme and whether Plaintiffs and Longmire suffered any resulting damage. All parties except Pfizer desire to prove that such a marketing scheme existed, and Pfizer will endeavor to refute this primary allegation.

Notice of Removal, ¶ 14.

The most Pfizer's argument proves is that in some manner Longmire may benefit if Plaintiffs prove that Pfizer conducted a fraudulent marketing scheme with respect to the marketing of Neurontin. This clearly is not enough to support realignment, as the fact that "one defendant may benefit should plaintiff prevail against another does not provide a sufficient basis for realignment." *Irving Trust Co. v. Century Export and Import*, 464 F. Supp. 1232, 1241 (S.D.N.Y. 1979). *See* also *Aynesworth v. Beech Aircraft Corp.*, 604 F. Supp. 630, 634 (W.D. Tex. 1985) (holding the fact that one defendant may be entitled to indemnity from another does not support realignment or a finding that defendant entitled to indemnity is a nominal party).

To see that there is a collision of interests between Plaintiffs and Longmire, this Court need look no further than the simple fact that Plaintiffs allege Longmire was a knowing participant in the fraudulent scheme to market Neurontin on an off-label basis. In particular, Paragraphs 132 and 133 of Count Nine (Conspiracy to Defraud) are instructive. In Paragraph 132, the Plaintiffs aver that "in knowing and intentional furtherance of the

conspiracy, Longmire authorized, or lent his name to, the articles and studies previously described herein . . . ." Similarly, in Paragraph 133 Plaintiffs aver that "in knowing and intentional furtherance of the conspiracy, Longmire acted as a speaker as previously described herein . . . ."

The gravamen of Longmire's suit against Pfizer is that Longmire was an unwitting participant in the fraudulent marketing of Neurontin.  For example, Longmire alleges in Paragraph 27 of his Complaint against Pfizer that "Dr. Longmire is specifically named in these complaints as participating in this fraudulent marketing scheme, even though he was ignorant of the Defendants' scheme to illegally promote off-label uses of Neurontin." Notice of Removal, Exh. B., ¶ 27.  Obviously, there is a real and substantial collision of interests between the Plaintiffs and Longmire.  Pfizer's request to realign Longmire as a Plaintiff herein is due to be denied, and remand is required.

## IV. <u>LONGMIRE IS NOT FRAUDULENTLY JOINED AS A DEFENDANT</u>

### A. The Governing Law of Fraudulent Joinder

The law governing fraudulent-joinder removals is well established. The federal courts are courts of limited jurisdiction. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). "[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Id.* "On a motion to remand, the removing party bears the burden of establishing [federal-subject-matter] jurisdiction." *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).  As such, a removing defendant has the burden of proving fraudulent joinder. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).  This burden is a "heavy one." *Id.*  The Court must evaluate the factual allegations in the light most favorable to the plaintiff, and must resolve any

uncertainties about state substantive law in favor of the plaintiff. *Id.* Where fraudulent joinder is alleged, if there is even a possibility that a state court would find that the complaint states a cause of action against the resident defendant, the federal court must remand the case. *Id.*

### B.   Plaintiffs Have Pled Their Fraud Claims Against Longmire with Sufficient Particularity

Pfizer contends that Plaintiffs have failed to plead their fraud claims against Longmire with particularity as required by Fed. R. Civ. Proc. 9(b). Specifically, Pfizer says, "Plaintiffs fail to plead the 'time, place and purported contents of the false representations' allegedly made by Longmire." Notice of Removal, ¶ 16. This accusation is simply incorrect.

Fed. R. Civ. Proc. 9(b) provides in pertinent part, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, the Eleventh Circuit has established that Rule 9(b)'s particularity requirement must not be allowed to swallow Rule 8(a)'s notice-pleading mandate. "Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (citation omitted) (alteration in *Brooks*). "'The application of [Rule 9(b)] must not abrogate the concept of notice pleading.'" *Id.* (quoting *Durham v. Business Management Associates,* 847 F.2d 1505, 1511 (11th Cir. 1988)) (alteration in *Brooks*). "[A] court . . . should always be careful to harmonize the directives of rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir. 1985).

10

Rule 9(b) may be satisfied if the complaint sets forth: (1) precisely what statements were made in what documents or oral representations, or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud. *Brooks*, 116 F.3d at 1371.

"However, 'alternative means are also available to satisfy the rule.'" *Id.* (quoting *Durham*, 847 F.2d at 1512). Both *Brooks* and *Durham* referenced *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3rd Cir. 1984), as an example of such "alternative means." *Brooks* approvingly cited *Seville Indus.* for the following pleading methodology by which Rule 9(b) would be satisfied: "list containing allegations of fraud describing nature and subject of statements found to be sufficient, even where precise words used were not alleged." *Brooks*, 116 F.3d at 1371. This is consistent with the common-sense observation in *Florida Dept. Ins. v. Debenture Guar.*, 921 F. Supp. 750, 753 (M.D. Fla. 1996), a post-*Durham* case, that "the complaint need only provide a reasonable delineation of the underlying acts and transactions allegedly constituting the fraud."

Plaintiffs' Complaint in the case at bar clearly satisfies these standards with respect to Longmire. Plaintiffs allege that Longmire made fraudulent statements during oral presentations at a consultants meeting in Jupiter Beach, Florida, on the weekend of April 19-21, 1996, and during an oral presentation at a consultants meeting in Boston, Massachusetts, on May 10-11, 1996. Complaint, ¶¶ 51, 54, 56. Plaintiffs allege that these fraudulent statements by Longmire "addressed the effectiveness of Neurontin as a treatment for pain." Complaint, ¶ 54. With respect to the statements made by physician

11

speakers at these consultants meetings, Plaintiffs allege:

> These presentations asserted or reasonably inferred that legitimate scientific evidence supported the efficacy and safety of Neurontin for off-label uses, although Pfizer knew no such evidence existed. Pfizer also hired physician speakers to relate positive anecdotal experiences concerning the off-label uses of Neurontin, although Pfizer knew that legitimate scientific evidence directly contradicted many of these anecdotal claims.

Complaint, ¶ 48.

The presentations at the Jupiter Beach consultants meeting were "favorable toward the off-label use of Neurontin." Complaint, ¶ 53. An identical format was followed at the consultants meeting in Boston. Complaint, ¶ 56.

Plaintiffs allege that Longmire knew, or should have known, there was no legitimate scientific evidence that Neurontin was effective for off-label uses, but nonetheless represented that there was legitimate scientific evidence that the drug was effective for those uses. Complaint, ¶¶ 100, 104, 108. Plaintiffs also allege that Longmire failed to disclose this lack of legitimate scientific evidence in his presentations. Complaint, ¶ 115. Plaintiffs further allege that Longmire knew there was legitimate scientific evidence contradicting his representations that Neurontin was effective for off-label uses; and that Longmire knew his representations promoting Neurontin as effective for off-label uses did not constitute independent medical judgment, because of Pfizer's payments of money and furnishing of gratuities to him, and because Pfizer controlled the contents of his representations. Complaint, ¶ 115; *see* ¶¶ 46-48, 53, 54, 56.

Thus, Plaintiffs have alleged the time and place of Longmire's fraudulent statements and omissions; the oral presentations in which the fraudulent statements and omissions

were made; and the nature and subject of the fraudulent statements and omissions, *i.e.*, Neurontin was effective as an off-label medication for pain. Pursuant to the holdings in *Brooks* and *Durham*, this is sufficient for Rule 9(b) purposes.[3]

But Plaintiffs go even further. Plaintiffs allege that Longmire represented there was legitimate scientific evidence supporting this assertion, when he knew no such evidence existed; allege that Longmire failed to disclose there was legitimate scientific evidence directly contradicting this assertion; and allege that Longmire failed to disclose that this assertion was not his independent medical judgment, because Pfizer had purchased his favorable promotions of Neurontin and controlled their content. Plaintiffs further allege that the duty to disclose arose because Longmire, having spoken on the subject of Neurontin's effectiveness as a pain medication, had a duty to speak the complete truth. Complaint, ¶ 116.

A complaint is to be read as a whole in determining compliance with Rule 9(b). *Shared Network Technologies, Inc. v. Taylor*, 659 F. Supp. 422, 428 (N.D. Ga. 1987). Plaintiffs' allegations here comport with the flexible interaction of Rule 9(b) and Rule 8(a), as approved by the case law. Stated differently, "[P]laintiff's complaint pleads the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice and safeguard against spurious charges." *Id.* at 429. Thus, the purposes of Rule 9(b) have been served. *Brooks*, 116 F.3d at 1370-71; *Durham*, 847 F.2d at 1511.

Pfizer also contends that "Plaintiffs fail to allege with particularity how they relied

---

[3] Plaintiffs also allege that Longmire conducted "studies" and gave short speeches to other physicians which fraudulently misrepresented Neurontin's efficacy for off-label uses. Complaint, ¶¶ 65, 72.

13

on any fraudulent statements by Longmire." Notice of Removal, ¶ 16. Pfizer is incorrect. Plaintiffs repeatedly allege that they relied on Longmire's aforesaid misrepresentations and omissions, and that they would not have paid for Neurontin prescribed for off-label uses had they known of Longmire's above-described falsehoods and omissions. Complaint, ¶¶ 100, 101, 104, 105, 108, 109, 115-118.

Pfizer's Rule 9(b) attack on the sufficiency of Plaintiffs' allegations against Longmire is without merit, requiring remand of this action.

### C. Certain of Plaintiffs' Negligence and Wantonness Claims Do Not Implicate Rule 9(b)

Plaintiffs allege, in the negligence count, that Longmire owed a duty of care to third-party medical-benefit payors such as Plaintiffs when he promoted the off-label use of Neurontin. Complaint, ¶ 90. Plaintiffs allege that it was foreseeable to Longmire that if he breached this duty, Plaintiffs would suffer financial damage from paying for Neurontin for off-label uses when they would not otherwise have done so. *Id.* Plaintiffs further allege, in the wantonness count, that Longmire knew financial harm to third-party medical-benefit payors such as Plaintiffs would likely or probably result from his promotion of off-label uses for Neurontin, because Plaintiffs would pay for Neurontin prescribed for off-label uses when they would not otherwise have done so. Complaint, ¶ 95. The Complaint then alleges that Longmire negligently or wantonly promoted the off-label use of Neurontin in the following way, among others: by promoting Neurontin for off-label uses which are not medically accepted. Complaint, ¶ 91(a).

Neither of these claims for negligence and wantonness implicate Rule 9(b)'s particularity requirement, because neither of these claims require a fraudulent

14

misrepresentation or omission as an element thereof. Neurontin can be negligently or wantonly promoted for off-label uses which are not medically accepted without engaging in any material misrepresentations or omissions. Therefore, even if Plaintiffs' fraud claims did not comply with Rule 9(b), which they do, this claim in the negligence and wantonness counts would state a cause of action against Longmire and thereby defeat diversity. "[A] single valid claim against a resident defendant is enough to defeat diversity jurisdiction." *Sexton v. Principal Financial Group*, 920 F. Supp. 169, 172 (M.D. Ala. 1996). Remand is therefore required.

### D. Plaintiffs' Civil-Conspiracy Claim Defeats Diversity Without Reference to Rule 9(b), Because it Does Not Require Specific Fraudulent Representations by Longmire Himself

Plaintiffs have brought a civil-conspiracy claim against Pfizer and Longmire, alleging that they conspired together to defraud Plaintiffs through the misrepresentations and omissions previously set out in the Complaint. Complaint, ¶¶ 124-136. In order to be actionable, a civil conspiracy requires a completed tort, *i.e.*, an overt act in furtherance of the conspiracy causing damage. *AmSouth Bank N.A. v. Spigener*, 505 So.2d 1030, 1040 (Ala. 1986). Plaintiffs have so alleged, incorporating their previously pled fraud claims. Complaint, ¶ 134. However, a conspirator who does not actually commit the damage-causing overt act is nonetheless liable for the damage caused by the act of his coconspirator. *Huckleberry v. M.C. Dixon Lumber Co., Inc.*, 503 So.2d 1209, 1210-11 (Ala. 1987). Stated differently, each conspirator is civilly liable for the acts of his coconspirators in furtherance of the conspiracy. *DeBardeleben v. Sellers*, 17 Ala. App. 247, 250, 84 So. 403, 405 (Ala. App. 1919); *National Park Bank of New York v. Louisville & N. R. Co.*, 74 So. 69, 71-72 (Ala. 1917).

Thus, Plaintiffs have a possibility of recovery against Longmire in state court without regard to the fraudulent misrepresentations he is alleged to have personally made. Plaintiffs allege fraudulent misrepresentations by Pfizer, as well as Longmire, upon which they relied to their resulting damage. Pfizer <u>does not contend that its misrepresentations alleged in the Complaint do not comply with Rule 9(b)</u>.[4] Notice of Removal, ¶¶ 15-17. Pfizer only alleges that Longmire's misrepresentations are not pled with Rule 9(b) particularity. *Id.* But, under Alabama law, Longmire is liable as a coconspirator for Pfizer's fraudulent misrepresentations which damaged Plaintiffs - - whether he made any misrepresentations himself or not.

Plaintiffs have stated a civil-conspiracy cause of action against Longmire which is not affected by any purported Rule 9(b) defects in misrepresentations made by Longmire himself. Thus, there is a possibility of recovery in state court against Longmire on the civil-conspiracy claim, even if Longmire's fraudulent representations do not satisfy Rule 9(b) (which they do). As noted above, even one valid claim against a resident defendant destroys diversity jurisdiction. *Sexton*, 920 F. Supp. at 172. Remand is therefore required.

## IV.    PLAINTIFFS HAVE PLED A CAUSAL LINK BETWEEN LONGMIRE'S TORTIOUS CONDUCT AND THEIR PAYMENTS FOR NEURONTIN PRESCRIBED FOR OFF-LABEL USES

Pfizer's final removal argument is that Plaintiffs have no possibility of recovery against Longmire because, Pfizer says, "they have failed to allege a causal link (an essential element of all their claims) between Longmire's alleged fraudulent and unlawful behavior and their purported payments for Neurontin prescribed for 'off-label' uses." Notice

---

[4] The wealth of detail alleged against Pfizer satisfies Rule 9(b) in any event.

16

of Removal, ¶ 17. Pfizer's allegation that a "causal link" has not been pled is vague and unclear. Presumably, this could only refer to two things.

First, this contention could mean that Plaintiffs have failed to allege proximate cause. But Plaintiffs have specifically alleged proximate cause in each of their claims against Longmire, including reliance with respect to the fraud claims, reliance being the causation element of fraud. Complaint, ¶¶ 92, 97, 100, 101, 108, 109, 117, 118, 134.

The only other available "causal-link" argument would be that the Complaint does not allege that Longmire's fraudulent representations were made directly to Plaintiffs. However, such an allegation is unnecessary, because under Alabama law, a plaintiff can permissibly rely on fraudulent representations that were not made directly to him.

"There is a duty not to make a false representation to those to whom a defendant intends, for his own purposes, to reach and influence by the representation . . . and to those members of a group or class that the defendant has special reason to expect to be influenced by the representation." *Colonial Bank of Alabama v. Ridley & Schweigert*, 551 So.2d 390, 396 (Ala. 1989). A third party who is injured by a fraudulent misrepresentation has a cause of action against the person who made the representation, if that person intended the representation to influence a class of persons to whom the third party belonged. *Thomas v. Halstead*, 605 So.2d 1181, 1184-85 (Ala. 1992). "If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place." *Id.* at 1184. Thus, "[i]n Alabama, it is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured." *Id.*

This Court has applied this legal principle on many occasions. *E.g.*, *Bloodsworth v.*

17

*Smith & Nephew*, 417 F. Supp.2d 1249, 1251 n. 2 (M.D. Ala. 2006); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp.2d 1280, 1291 n. 8 (M.D. Ala. 2001); *Wheelan v. Sessions*, 50 F. Supp.2d 1168, 1174 (M.D. Ala. 1999). The Court's holding in *Bloodsworth* accurately summarizes Alabama law:

> The court notes that Mrs. Bloodsworth was not the direct recipient of Lanier's alleged misrepresentations and/or omissions; rather, Dr. Hodurski was. As discussed in the court's prior Order, the fact that she was not the "hearer" is not fatal to her fraud claims against Lanier because an argument can be made that, by promoting Smith & Nephew's products to Dr. Hodurski, Lanier intended to reach and influence Dr. Hodurski's patients.

417 F. Supp.2d at 1251 n. 2 (citing *Colonial Bank*, 551 So.2d at 396).

This is precisely what Plaintiffs have alleged in their Complaint. In addition to specifically alleging reliance upon Longmire's misrepresentations in each of their causes of action, Plaintiffs also allege as follows, which is incorporated into each cause of action:

> Pfizer and David Reynolds Longmire intended that the misrepresentations regarding off-label uses of Neurontin, previously set out herein, would reach and influence third-party medical-benefit payors, including Plaintiffs, and expected third-party medical-benefit payors, including Plaintiffs, to be influenced by these misrepresentations and pay for Neurontin prescribed for off-label uses, because most of Pfizer's potential profit from off-label prescriptions would be obtained from third-party medical-benefit payors. Said misrepresentations did in fact reach and influence third-party medical-benefit payors, including Plaintiffs, as intended and expected by Pfizer and David Reynolds Longmire.

Complaint, ¶ 77.

Pfizer's "causal-link" argument is without merit, requiring remand.

## V. CONCLUSION

The foregoing considered, Plaintiffs respectfully submit that this action is due to be

remanded to the Circuit Court of Montgomery County, Alabama, whence it was improperly removed by Pfizer.

      Respectfully submitted,

      /s/ W. Lloyd Copeland
      STEVEN A. MARTINO    (MAR057)
      W. LLOYD COPELAND    (COP006)

OF COUNSEL:

**TAYLOR ✦ MARTINO ✦ KUYKENDALL**
Post Office Box 894
Mobile, Alabama 36601-0894
Telephone:  (251) 433-3131
Facsimile:   (251) 433-4207
stevemartino@tmklegal.com
lloyd@tmklegal.com

      /s/ Charles H. Dodson
      CHARLES H. DODSON    (DOD006)
      JOSEPH D. STEADMAN    (STE084)

OF COUNSEL:

**DODSON & STEADMAN, P.C.**
Post Office Box 1908
Mobile, AL. 36633-1908
Telephone:  (251) 690-9300
Facsimile:   (251) 690-9311
chd@dodsonsteadman.com
jds@dodsonsteadman.com

      /s/ Gregory C. Cook
      GREGORY C. COOK   (COO038)

OF COUNSEL:

**BALCH & BINGHAM, LLP**
1901 6th Avenue, N.
Suite 2600

Birmingham, AL 35203
Telephone:  (205) 251-8100
Facsimile:   (205) 226-8798
gcook@balch.com

        /s/ Robert R. Riley, Jr.
        ROBERT R. RILEY, JR.  (RIL012)

**OF COUNSEL:**
RILEY & JACKSON, P.C.
1744 Oxmoor Road
Birmingham, Alabama 35209
(205) 879-5000
rob@rileyjacksonlaw.com

## CERTIFICATE OF SERVICE

     I hereby certify that on June 26, 2006, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Brian A. Wahl, Esq.
Fred M. Haston, III, Esq.
Andrew B. Johnson, Esq.

and by placing a copy of same in the United State Mail, first-class postage prepaid and addressed to his regular mailing address to the following:

David Reynolds Longmire, M.D.
13150 Highway 43
Russellville, AL 35653

        /s/ W. Lloyd Copeland
        W. LLOYD COPELAND